## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

BARBARA PERRY,

|                              |
|                              |
Plaintiff,

vs.

ZOETIS LLC,

Defendant.

**4:18CV3128**


**MEMORANDUM
AND ORDER**

Barbara Perry ("Plaintiff" or "Perry") claims her former employer, Zoetis LLC ("Defendant" or "Zoetis"), engaged in discriminatory wage practices based on sex, in violation of Neb. Rev. Stat. § 48-1219 *et seq.* (commonly known as the Nebraska Equal Pay Act ("NEPA")), and constructively discharged her after she was subjected to gender-based employment discrimination, in violation of the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1101 *et seq.* No federal claims are alleged.[1]

This matter is now before the court on cross-motions for summary judgment (Filing Nos. 40, 43). Plaintiff has also moved to strike the portion of Defendant's motion for summary judgment that relates to her NEPA claim (Filing No. 63).

### I. Plaintiff's Motion to Strike

Plaintiff's motion to strike is procedurally improper and will be denied.[2] Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may order

---

[1] This action was filed in the District Court of Lancaster County, Nebraska, on August 9, 2018, but was removed to this court by Defendant on September 10, 2018, on the basis of diversity of citizenship. (Filing No. 1.) On January 10, 2019, the court denied Plaintiff's motion to remand after finding the amount in controversy exceeds $75,000. (Filing Nos. 17, 18.)

[2] The brief filed in support of the motion to strike provides additional legal authority for an argument that was advanced in Plaintiff's previously filed brief

stricken from any *pleading* any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis supplied). A motion is not a pleading. *See* Fed. R. Civ. P. 7(a); 5C Wright & Miller, Federal Practice and Procedure § 1380 (3d ed.) ("Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a); thus motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f)."); *Milk Drivers, Dairy & Ice Cream Employees, Laundry & Dry Cleaning Drivers, Clerical & Allied Workers, Local Union No. 387 v. Roberts Dairy*, 219 F.R.D. 151, 152 (S.D. Iowa 2003) ("[A] motion to strike a motion for summary judgment is inappropriate and should be denied."); *Luer v. St. Louis Cty*, No. 4:17-CV-00767-NAB, 2018 WL 6064862, at *13 (E.D. Mo. Nov. 19, 2018) ("Neither a motion for summary judgment, nor its accompanying memorandum in support, nor the attached statement of uncontroverted facts is a pleading, and courts in this district have generally not permitted parties to attack such non-pleadings through motions to strike.").

## II. Cross-Motions for Summary Judgment

### A. Procedure

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).

The moving party bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere

---

opposing Defendant's motion for summary judgment. It is, in effect, an unauthorized supplement brief. *See* NECivR 7.1(c) ("No party may file further briefs or evidence [in support of or in opposition to a motion] without the court's leave.").

allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Smith-Bunge v. Wisconsin Cent., Ltd.,* 946 F.3d 420, 424 (8th Cir. 2019).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

This court's local rules further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts," which "should consist of <u>short</u> numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a) (emphasis in original). "The statement must not contain legal conclusions." *Id.* The opposing party's brief must include "a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). "Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed." *Id.* The moving party may, but is not required, to reply to the opposing party's response. *See Metro. Prop. & Cas. Ins. Co. v. Westport Ins. Corp.*, 131 F. Supp. 3d 888, 892 n. 2 (D. Neb. 2015).

A party's failure to comply with these requirements can have serious consequences: The moving party's "[f]ailure to submit a statement of facts" or "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion for summary judgment." NECivR 56.1(1)(a) (emphasis omitted). On the other hand, "[p]roperly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(1)(b)(1) (emphasis omitted).

### B. The Parties' Statements of Material Facts

#### 1. Defendant's Statement

On February 7, 2020, Defendant, as the moving party, filed a 55-paragraph statement of material facts it contends are undisputed (Defendant's Statement of Material Facts ("DSMF"), Filing No. 46, pp. 1-10).[3] Plaintiff responded to each paragraph of Defendant's statement on March 9, 2020 (Plaintiff's Response to Material Facts ("PRMF"), Filing No. 61, pp. 3-12), and also set out in her opposing brief a largely redundant, 62-paragraph statement of additional facts, numbered as paragraphs 56 through 116 (Plaintiff's First Statement of Additional Facts ("PSAF1"), Filing No. 61, pp. 12-23).[4] On March 16, 2020, Defendant filed a reply brief, in which it responded to each paragraph of Plaintiff's statement of additional facts (Defendant's Response to Additional Facts ("DRAF"), Filing 70, pp. 4-7) and added six new paragraphs of its own (incorporated by references to Defendant's brief in opposition to Plaintiff's motion for summary judgment), which are numbered as paragraphs 117 through 122 (Defendant's Second Statement of Additional Facts ("DSAF2") *ibid.*, p. 8).

---

[3] Defendant's Statement of Material Facts was filed separately from its brief, which is contrary to the plain wording of the court's local rule. See NECivR 56.1(a)(1) ("The moving party must *include in the brief* in support of the summary judgment motion a separate statement of material facts ….") (emphasis supplied). Both parties have also failed to certify that their respective briefs comply with applicable word limits. *See* NECivR 7.1(d)(3) (effective December 1, 2019).

[4] There are two paragraphs numbered 65 in Plaintiff's Statement of Additional Facts. The second paragraph will be designated herein as 65A.

4

Plaintiff concedes in her response that paragraphs 2, 4, 7-13, 17,[5] 20-22, 24, 26-28, 34, 38, and 45-47 of Defendant's Statement of Material Facts are undisputed.

In addition, Plaintiff does not dispute paragraphs 1, 3, 5, 6, 14-16, 19, 29-33, and 35 of DSMF, although she includes additional facts or arguments in her responses to these paragraphs. Defendant contends "[t]he Court should deem those facts undisputed and disregard Plaintiff's additional factual assertions and legal argument after admitting the fact is not in dispute." (Filing 70, p. 3.) The court will deem the paragraphs admitted. *See* NECivR 56.1(b)(1); *Roe v. St. Louis Univ.*, 746 F.3d 874, 881 (8th Cir. 2014) ("If no objections have been raised in the manner required by the local rules, a district court will not abuse its discretion by admitting the movant's facts."); *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 798–800 (8th Cir. 2014) ("[The non-movant's] inclusion of 'additional material facts' in her opposing brief did not comply with these requirements [of NECivR 56.1(b)(1)]. Although numbered and referenced with pinpoint references, nowhere in [the non-movant's] fact section does she dispute any undisputed fact advanced by [the movant]. Accordingly, the district court properly considered the movant's material facts admitted."). However, the court will consider Plaintiff's additional facts to the extent they are properly supported by the record and capable of being presented at trial in admissible form. *See* Fed. R. Civ. P. 56(c); *Jenkins v. Winter,* 540 F.3d 742, 747 (8th Cir. 2008) (holding that district court should have considered employee's statement of facts presented in opposition to employer's summary judgment motion, where employee followed local rule by separately listing facts as to which she contended a genuine issue existed and referring specifically to portions of record).

Plaintiff "disputes" paragraphs 18, 23, 25, 36, 37, 39-44, 48-55 of DSMF, but her responsive statements do not actually controvert the facts stated in paragraphs 18, 23, 25, 36, 37, 39-44, 48, 49, 54, and 55. With respect the remaining four paragraphs (50-53), the court finds there is at least some dispute regarding the facts stated. These disputed facts, however, are not outcome determinative.

---

[5] Plaintiff made no response to paragraph 17, but subsequently indicated that the facts stated therein are "undisputed" when Defendant repeated the statement in response to Plaintiff's Statement of Material Facts. (See Filing No. 59, ¶ 13; Filing No. 72, ¶¶ 11-13.)

The court will not here analyze Plaintiff's Statement of Additional Facts (paragraphs 56-116), or Defendant's responses and objections thereto, but will give due consideration to any additional facts stated by the parties that are properly supported by the record and capable of being presented at trial in admissible form. *See Tramp*, 768 F.3d at 800 (finding no abuse of discretion in district court's "not spend[ing] any time parsing through [the non-movant's statement of additional facts] to discern which of them were included to refute facts advanced by [the movant].").

## 2. Plaintiff's Statement

Plaintiff's brief in support of her motion for summary judgment was filed on February 7, 2020 (the same date as Defendant's filing). It includes a 64-paragraph statement of material facts she claims are undisputed (Plaintiff's Statement of Material Facts ("PSMF"), Filing No. 48, pp. 1-11). Not surprisingly, this statement of facts is substantially similar to the 62-paragraph statement of additional facts that she subsequently included in her brief opposing Defendant's motion for summary judgment. Defendant responded to each paragraph of Plaintiff's statement on March 9, 2020 (Defendant's Response to Material Facts ("DRMF"), Filing No. 59, pp. 2-13), and set out in its opposing brief a 47-paragraph statement of additional facts (Defendant's First Statement of Additional Facts ("DSAF1"), *ibid.*, pp. 13-20), which, for the most part, mirrors the statement of facts that Defendant previously filed in conjunction with its motion for summary judgment. Plaintiff filed a reply brief on March 16, 2020, which includes a response to each paragraph of Defendant's statement of additional facts (Plaintiff's Response to Additional Facts ("PRAF"), Filing No. 72, pp. 1-8), together with a 16-paragraph statement of additional facts, numbered as paragraphs 48 through 63 (Plaintiff's Second Statement of Additional Facts ("PSAF2"), Filing No. 72, pp. 9-11). Most, but not all, of these additional facts are duplicative of facts stated in Plaintiff's other briefs. Finally, on April 13, 2020, Defendant with leave of court filed a sur-reply to Plaintiff's latest statement of additional facts (Filing No. 78-1).

Defendant concedes in its response that paragraphs 1, 3, 4, 9, 10, 12, 16, 17, 23, 27, 29, 31, 33, 34, 48, 49, 51, 53, 56, and 57 of Plaintiff's Statement of Material Facts are undisputed. The remaining paragraphs are disputed, either in whole or in

part, and Defendant makes evidentiary objections with respect to paragraphs 8, 13, 15, 19, 36-38, 40, 42-45, 50, 52, 54, 55, and 58.

Defendant objects to the use of the term "constructive discharge" in paragraph 8 of PSMF, as being argumentative and conclusory. This objection is sustained

Defendant objects to the materiality of facts stated in paragraphs 13, 15, 36, 37, 42, 43, and 54 of PSMF, which generally concern the qualifications of Nathan Gross, a male employee who was paid more than Plaintiff. Such evidence is not relevant to proving a prima facie case under NEPA, but could potentially be relevant for other purposes, such as rebutting an affirmative defense. These materiality objections are therefore sustained only in part.

Defendant objects to the term "only" in paragraph 19 of PSMF because it mischaracterizes and misstates the evidence. This objection is sustained.

As to paragraphs 36-38, 40, 42-45, and 54 of PSMF, Defendant objects that a statement "is a conclusory, self-serving allegation that is not supported by any evidence other than Plaintiff's own testimony." With the understanding that these statements are merely Plaintiff's opinions, the objections are overruled.

Defendant also objects that a statement of fact in paragraph 55 of PSMF "is a conclusory, self-serving allegation that is not supported by any evidence other than Plaintiff's own testimony." Plaintiff's testimony concerns a conversation she had with her supervisor, Rex Newsham, in August 2016, when she asked for a pay increase and Newsham allegedly responded that "he didn't think Perry deserved to be making more money." Such testimony is based on Plaintiff's personal knowledge, as a participant in the conversation, and is a specific factual allegation that requires no corroboration. *See Marsh v. Hog Slat, Inc.*, 79 F. Supp. 2d 1068, 1072-76 (N.D. Iowa 2000) (discussing sufficiency of plaintiff's affidavit in resistance to summary judgment motion in employment discrimination case, which was objected to as being conclusory, self-serving, and uncorroborated).

Although Defendant states that "Newsham testified he could not recall the details of his conversation with Plaintiff during the August 2016 meeting," this does not render Plaintiff's testimony inadmissible. Indeed, the supervisor's testimony does not even create a factual dispute. "An assertion that a party does not recall an event does not itself create a question of material fact about whether the event did, in fact, occur." *To v. U.S. Bancorp*, 651 F.3d 888, 892 n. 2 (8th Cir. 2011) (citing *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1057 (8th Cir. 2007)).

Defendant makes the same objection to paragraph 58 of PSMF, in which Plaintiff references her own deposition testimony concerning a conversation she had with Defendant's HR Manager, Malissa Sittler, in December 2016. Plaintiff states she "told Sittler that she was applying for other jobs because [she] was performing more duties and making less money than Gross," a male employee, and "Sittler looked at her computer and told Perry that Gross hadn't been paid 'that much more' than Perry." Sittler has denied making the alleged statement and testified that "Plaintiff did not inform Sittler that she was applying for other jobs," but this merely creates an issue of fact (which, again, is not outcome determinative).

Defendant's also objects that the statement of fact "mischaracterizes and misstates the evidence" and "does not conform to the evidence." This objection is sustained with reference to Plaintiff's statement that she met with Sittler "regarding the unequal pay issue," but is otherwise denied. Plaintiff's statement that "Sittler made it clear that she wasn't going to do anything about the discriminatory pay issue" is understood to be merely Plaintiff's opinion.

Defendant objects to paragraphs 50 and 52 of PSMF "to the extent Plaintiff's [*sic*] cites her own testimony as the statement of fact concerns Newsham's testimony." These objections are sustained.

Finally, Defendant disputes all or part of paragraphs 2, 5-8, 14, 20-22, 24-26, 28, 30, 32, 35, 39, 41, 46, 47, and 60 of PSMF, because they mischaracterize or misstate the evidence. The court agrees, and accepts Defendant's statements of fact regarding the cited testimony in lieu of Plaintiff's statements.

### 3. Summary of Material Facts

Plaintiff began her employment with Zoeitis's predecessor, Pfizer, on August 3, 2011, as a Laboratory Technician in Lincoln, Nebraska. (PSMF ¶¶ 1, 5; DRMF ¶ 11.) As of February 2013, Plaintiff was earning $14.45 per hour at pay grade 010-1. (Sittler Decl. Ex. 6 ("Pay Detail"), Filing No. 47-4.) In March 2013, Plaintiff was promoted from Laboratory Technician (010-1) to Laboratory Assistant (010-2), and her pay was increased to $16.50 per hour. (*Ibid.*; DRMF ¶ 5, 11.) Zoetis subsequently changed the position title of Laboratory Assistant to Laboratory Technologist. (DRMF ¶ 6.) Plaintiff received a merit increase in March 2014, to $16.96 per hour, and another merit increase in March 2015, to $17.41 per hour. (Pay Detail; DRMF ¶ 11.) On April 13, 2015, Plaintiff was promoted from Laboratory Technologist (010-2) to Laboratory Technologist (020-1) and her pay was increased to either $17.73 or $17.93 per hour. (*Ibid.*) Plaintiff received a merit increase in March 2016, to $18.45 per hour, and another merit increase in March 2017, to $18.99 per hour. (Pay Detail; PSMF ¶¶ 9, 11; PSAF2 ¶ 48; DSMF ¶ 13, 20.) Plaintiff resigned her position on April 7, 2017. (DSMF ¶ 21.)

Plaintiff's wage discrimination claim is based on two male comparators: (1) Nathan Gross, who was hired on November 11, 2015, as a Laboratory Technologist (030-1)—the most senior grade for the position—and paid $21.00 per hour until his employment was terminated on July 27, 2016; and (2) Mitchell Foster, who transferred from another department on October 10, 2016, to become a Laboratory Technologist (020-2)—one grade below Gross, and one grade above Plaintiff—with a rate of pay of $18.73 per hour, the same rate of pay he received in his previous position. (Pay Detail; PSMF ¶¶ 12, 16, 17; DSMF ¶¶ 8, 11.)

### C. Standard of Review

In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *See Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue;

the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

"There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (internal quotations and citations omitted). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

Cross-motions for summary judgment do not require the court to grant summary judgment. "The filing of cross-motions does not concede the absence of a triable issue of fact. The court is bound in such cases to deny both motions if it finds ... there is actually a genuine issue of material fact." *Jacobson v. Md. Cas. Co.,* 336 F.2d 72, 75 (8th Cir. 1964).

When faced with cross-motions, the normal course for the trial court is to "consider each motion separately, drawing inferences against each movant in turn." *Id.* (quoting *EEOC v. Steamship Clerks Union, Local 1066,* 48 F.3d 594, 603 n. 8 (1st Cir. 1995)). That is to say, "the court views the record in the light most favorable to plaintiff when considering defendant's motion, and the court views the record in the light most favorable to defendant when considering plaintiff's motion." *Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 614 (N.D. Iowa 2019) (citing *Weber v. Travelers Home & Marine Ins. Co.*, 801 F.Supp.2d 819, 825 (D. Minn. 2011)).

### D. Wage Discrimination Claim

Under Nebraska law, it is unlawful for an employer to "discriminate between employees in the same establishment on the basis of sex, by paying wages to any employee in such establishment at a wage rate less than the rate at which the employer pays any employee of the opposite sex in such establishment for equal work on jobs which require equal skill, effort and responsibility under similar working conditions." Neb. Rev. Stat. § 48-1221(1). However, "[w]age differentials are not within this prohibition where such payments are made pursuant to: (a) An established seniority system; (b) a merit increase system; or (c) a system which

10

measures earning by quantity or quality of production or any factor other than sex." *Id.* (affirmative defenses).

"[B]ecause § 48-1221(1) is patterned after the federal EPA [Equal Pay Act], 29 U.S.C. § 206(d), it is appropriate to look to federal court decisions construing 29 U.S.C. § 206(d) for guidance with respect to § 48-1221(1)." *Knapp v. Ruser*, 901 N.W.2d 31, 46 (Neb. 2017). "[W]hen bringing a claim of pay discrimination on the basis of sex pursuant to the federal EPA, '[a] plaintiff must first establish a prima facie case that women were paid less than men in the same establishment for equal work requiring equal skill, effort, and responsibility and performed under similar working conditions" and that "[i]f a plaintiff establishes a prima facie case, the burden then shifts to the defendant to prove one of [the] statutory affirmative defenses.'" *Id.* (quoting *Price v. Northern States Power Co.,* 664 F.3d 1186, 1191 (8th Cir. 2011)).[6]

"Therefore, when bringing a claim of wage discrimination based on sex under § 48-1221(1), a plaintiff must first establish a prima facie case by showing by a preponderance of the evidence that (1) the plaintiff was paid less than a person of the opposite sex employed in the same establishment; (2) for equal work on jobs

---

[6] "An Equal Pay Act plaintiff's prima facie case—that is, one that will avoid summary judgment—consists of sufficient evidence the employer paid different salaries to men and women for equal work performed under similar conditions. At the summary judgment stage of the proceedings, the employer's justification for the differences is irrelevant, unless it is strong enough to establish one of the statutory affirmative defenses as a matter of law." *Tenkku v. Normandy Bank*, 348 F.3d 737, 741 n. 2 (8th Cir. 2003); *see U.S. Equal Employment Opportunity Comm'n v. Maryland Ins. Admin.,* 879 F.3d 114, 120 (4th Cir. 2018) ("Once a plaintiff has made the required prima facie showing, under the EPA, the burdens of production *and* persuasion shift to the defendant-employer to show that the wage differential was justified by one of four affirmative defenses listed in the statute.") (emphasis in original); *Bumpass v. Wireless*, No. 5:16-CV-00106-KGB, 2019 WL 4741666, at *20 (E.D. Ark. Sept. 27, 2019) ("In an EPA case, a defendant cannot escape liability merely by articulating a legitimate non-discriminatory reason for the employment action. The employer must prove that the pay differential was based on a factor other than gender.") (citing *Price*, 664 F.3d at 1191).

requiring equal skill, effort, and responsibility; (3) which were performed under similar working conditions. If a plaintiff establishes a prima facie case of wage discrimination based on sex, the burden then shifts to the defendant to prove one of the affirmative defenses set forth in § 48-1221(1)." *Id.*, at 46-47.

With regard to the second factor, the Nebraska Supreme Court noted that the Eighth Circuit Court of Appeals in *Hunt v. Nebraska Public Power Dist.,* 282 F.3d 1021 (8th Cir. 2002),

> explained the required showing of "equal work" by stating that the jobs need not be identical to be considered "equal" under the EPA and they need only be substantially equal. 282 F.3d at 1029. The court further stated that neither job classifications nor titles are dispositive for determining whether jobs are equal for purposes of the EPA and that determining whether two jobs are substantially equal requires a practical judgment on the basis of all the facts and circumstances of a particular case, including factors such as level of experience, training, education, ability, effort, and responsibility. *Hunt, supra.* The court further stated that two jobs could require insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility and still be substantially equal. *Id.* We find these standards to be sound, and we adopt them and apply them to this case.

*Id.* at 47 (affirming grant of summary judgment in favor of employer because evidence showed male employees had additional responsibilities that were not insubstantial or minor differences from the work plaintiff was doing).[7]

---

[7] "Although this inquiry is factual, summary judgment may be granted in an EPA case where there is no genuine dispute that the plaintiff was not subjected to unequal pay for equal work." *Hoover v. Nebraska ex rel. Nebraska Dep't of Admin. Servs.*, No. 4:12CV3197, 2013 WL 5308294, at *7 (citing *Grabovac v. Allstate Ins. Co.,* 426 F.3d 951, 956 (8th Cir. 2005)); *Younts v. Fremont County,* 370 F.3d 748, 753 (8th Cir. 2004)). *See also Hill v. City of Pine Bluff*, 696 F.3d 709, 712 (8th Cir. 2012) ("On this summary judgment record, no reasonable jury could find that, when Hill was promoted to zoning official, her new position was substantially equal to the position of either the senior supervisory official she replaced … or the successor supervising official, ...."); *Price*, 664 F.3d 1186, 1193 (8th Cir. 2011) (three female employees failed to establish prima facie of wage discrimination; although some

In this case, Plaintiff has failed to present sufficient evidence to establish that her position as a Laboratory Technologist (020-1) was substantially equal to either Mitchell Foster's higher-grade position as a Laboratory Technologist (020-2) or Nathan Gross's highest-grade position as a Laboratory Technologist (030-1). While all three employees worked in the same office and lab areas (DSMF ¶¶ 30, 31) and were all supervised by Rex Newsham (PSMF ¶ 21), who was also involved in determining their pay rates (PSMF ¶ 24), Plaintiff does not dispute that the duties and responsibilities of a Laboratory Technologist increased as the grade level increased.[8] (PSMF ¶ 33; DSMF ¶¶ 27, 29.) The minimum requirements for education and experience also increased for each grade level.[9] (Newsham Depo. Ex. 28, 29, 30 (Hiring Requisition / Position Descriptions), Filing No. 41-4, pp. 23-31.)

---

male employees were paid more than female employees in same position, other male employees in same position were paid same or less than female employees, and female employees failed to distinguish between male and female employees who had additional training and between their legitimate differences in starting salaries and performance ratings); *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 833 (8th Cir. 2008) ("The district court did not err in granting summary judgment on [plaintiff's] EPA claim in light of her failure to provide evidence that she was paid differently for equal work."); *Holland v. Sam's Club*, 487 F.3d 641, 645 (8th Cir. 2007) (plaintiff "clearly failed" to establish prima facie case where her only evidence was "a document identifying job titles, which uses vague and unexplained titles to describe the employees' positions").

[8] "The equal pay standard applies to jobs the performance of which requires equal responsibility. Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation. Differences in the degree of responsibility required in the performance of otherwise equal jobs cover a wide variety of situations." 29 C.F.R. § 1620.17(a).

[9] "The jobs to which the equal pay standard is applicable are jobs requiring equal skill in their performance. Where the amount or degree of skill required to perform one job is substantially greater than that required to perform another job, the equal pay standard cannot apply even though the jobs may be equal in all other respects. Skill includes consideration of such factors as experience, training, education, and ability. It must be measured in terms of the performance requirements of the job. If an employee must have essentially the same skill in order to perform either of two jobs, the jobs will qualify under the EPA as jobs the performance of which requires equal skill, even though the employee in one of the jobs may not exercise the required skill as frequently or during as much of his or her working time

Absent evidence that Plaintiff's duties were comparable to those of Gross or Foster, conclusory statements that the tasks were equal are insufficient. *Hoover*, 2013 WL 5308294, at *8 (granting summary judgment in favor of employer for plaintiff's failure to establish prima facie case). *See Younts,* 370 F.3d at 753 ("We are not particularly interested in a plaintiff's conclusory allegations about which jobs are equal."); *Berg v. Norand Corp.,* 169 F.3d 1140, 1146 (8th Cir. 1999) (holding conclusory affidavit testimony that two jobs are equal does not establish a prima facie case under the EPA).

Plaintiff contends Gross and Foster were not qualified to perform the duties and responsibilities of their positions, or even the duties and responsibilities of her lower-grade position, but this is irrelevant to proving a prima facie case. (PSMF ¶¶ 50, 52.) "[A]t this stage of the analysis, the focus of the inquiry is on the job, not on a comparison of the individual abilities of the employees." *Puchakjian v. Twp. of Winslow*, 804 F. Supp. 2d 288, 295 (D.N.J. 2011), *aff'd,* 520 F. App'x 73 (3d Cir. 2013); *see Cox v. Office of Attorney Ethics of the Supreme Court of New Jersey*, No. CIV. 05-1608 (AET), 2006 WL 3833470, at *6 (D.N.J. Dec. 29, 2006) ("At the prima facie stage, the Court examines only the skills and qualifications actually needed to perform the jobs, rather than the qualifications of the individuals who occupy the jobs.") (citing *Mulhall v. Advance Sec., Inc.,* 19 F.3d 586, 592 (11th Cir. 1994)); *Dodds v. Snyder*, No. 12-14567, 2013 WL 4760969, at *11 (E.D. Mich. Sept. 4, 2013) ("Skill includes consideration of factors as experience, training, education and ability, but it must be measured in terms of the performance requirements of the job, not as compared between the two individuals.") (internal quotation marks and alterations omitted; quoting 29 C.F.R. § 1620.15(a)); *Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 699 (7th Cir. 2003) ("[T]he comparison at this juncture is between positions, not individuals.").

Also irrelevant are Plaintiff's beliefs that she "had the education, experience, technical skills and competency required to be a 20-2 Lab Technologist" and

---

as the employee in the other job. Possession of a skill not needed to meet the requirements of the job cannot be considered in making a determination regarding equality of skill. The efficiency of the employee's performance in the job is not in itself an appropriate factor to consider in evaluating skill." 29 C.F.R. § 1620.15(a).

14

"possessed all the technical skills and competencies required for the 30-1 position." (PSMF ¶¶ 50, 51.) "Because at this stage the jobs and not the employees are compared, only the skills and qualifications actually needed to perform the jobs are considered." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1533 (11th Cir. 1992). As further explained in *Prewett v. Alabama Dep't of Veterans Affairs*, 533 F. Supp. 2d 1160 (M.D. Ala. 2007):

> In the analysis of "equal skill," this court sees an important distinction between (on the one hand) *standard* experience, training, or education required for a position and possessed by all individuals in that position, and (on the other hand) any *additional or unique* experience, training, or education not required for a position but that an individual may bring to the table. The Eleventh Circuit has made clear that consideration of the latter category of skills—those unique qualifications possessed by a particular employee holding a job—is proper only at the affirmative defense stage to "operate as a defense to liability rather than as part of a plaintiff's prima facie case under the Act." *Miranda,* 975 F.2d at 1533 n. 18; *see also Mulhall,* 19 F.3d at 594 n. 18 (finding that "individual employee qualifications are relevant only to defendant's affirmative defenses"). Therefore, if a particular individual's experience, training, or education is not relevant to the prima facie case, it logically follows that the only experience, training, or education that could be relevant to the prima facie case is that which may be properly characterized as a job requirement, prerequisite, or qualification applied to any person in that position.

*Id.* at 1170-71 (emphasis in original).

Not only has Plaintiff failed to present sufficient evidence to establish a prima facie case, but Defendant's uncontroverted evidence demonstrates that the pay differentials between Plaintiff and her two comparitors are due to factors "other than sex." That is to say, Defendant can also prevail on its affirmative defense.

When Zoetis makes a hiring decision for a Laboratory Technologist position, his or her supervisor and the facility's Human Resources Business Partner review the candidate's experience and education. Next, that experience and education is compared to the education and experience of other Laboratory Technologists that

report directly to the hiring supervisor. Based on this review, the supervisor and the Human Resources Business Partner determine the candidate's pay. The supervisor and the Human Resources Business Partner then compare the candidate's expected duties with Lincoln, Nebraska Laboratory Technologists who perform similar duties. Based on this comprehensive review and the expectations for the candidate, the supervisor and the Human Resources Business Partner determine the appropriate grade. The candidate's anticipated rate of pay is then compared to Zoetis's annual Salary Schedule to verify that it meets market standards for the assigned grade.[10] (DSMF ¶ 37.) This procedure was followed when Gross was hired.

_____

[10] Zoetis's Salary Schedule is prepared by Zoetis' Global Compensation Division annually and provides an hourly salary range for each position grade. (DSMF ¶ 2.) A Laboratory Technologist can receive a pay increase through a promotion to a higher job grade or a transfer into materially different position. A Laboratory Technologist can also receive a pay increase through a merit increase, up to the maximum amount for the position's grade set forth in Zoetis's published Salary Schedules. (DSMF ¶ 39.)

Laboratory Technologists within the same grade receive different pay based on their education, experience, and merit, but are all within the same hourly salary range set forth in Zoetis's Salary Structure. For example, at the time of Gross's discharge, Gross made $21.00 per hour as a Laboratory Technologist (030-1), whereas a female employee, Jackie Sturm ("Sturm") made $27.86 per hour as a Laboratory Technologist (030-1). Although Gross and Sturm were the same grade, Sturm had more applicable experience to the Laboratory Technologist position than Gross. (DSFM ¶ 40.) Sturm had been employed by Zoetis and its predecessors since 1987. (PRMF ¶ 40.) As another example, while Plaintiff was being paid $18.45 per hour, another female Laboratory Technologist (020-1), Annie VanDeventer ("VanDeventer"), was making $21.03 per hour. VanDeventer had more applicable experience, having been employed since 2003. (DSMF ¶ 41; PRMF ¶ 41.)

A Laboratory Technologist in a lower grade can also receive more pay than a Laboratory Technologist in a higher grade depending on the employee's education, experience (including Zoetis employment history), and merit. For example, at the time of Gross's discharge, Gross made $21.00 per hour as a Laboratory Technologist (030-1), whereas VanDeventer made $21.03 per hour as a Laboratory Technologist (020-1). Although Gross had a higher grade and more education, VanDeventer had more experience and had recently received a merit increase. (DSMF ¶¶ 40, 41.)

During the hiring process, Newsham interviewed Gross and learned more about his background, education, and experience as it applied to the job duties and expectations of a Laboratory Technologist. (DSMF ¶ 9.) After the decision to hire Gross, Newsham met with Sittler to determine Gross's pay and grade. (DSMF ¶ 10.) To determine Gross's pay, Newsham analyzed Gross's education and experience from his resume and interview. (DSMF ¶ 42.) Newsham noted that Gross had a laboratory-based Master of Science degree, which would have equipped Gross with the skills and knowledge required to perform the more advanced duties required by the Laboratory Technologist (030-1) position. (DSMF ¶ 43.) Gross also had six years of professional experience in a laboratory as a laboratory technician and one year of experience as a Graduate Research Assistant in the laboratory. This included experience and extensive training in aseptic procedures—the same procedures used in sterility testing and other types of testing performed at Zoetis. In addition, Gross had experience training undergraduate laboratory assistants and helping teach undergraduate laboratory-based courses. (DSMF ¶ 44.)

Newsham then analyzed Gross's experience and education with the experience and education of his other direct reports. In particular, Newsham compared Gross's education and experience to Zoetis' most recent hire that reported directly to Newsham, Marisa Kibbie ("Kibbie"), a female employee. (DSMF ¶¶ 45, 46.) Kibbie had a laboratory-based Bachelor of Science degree, a medical laboratory scientist certification, and five years of laboratory experience.[11] (DSMF ¶ 47.) At the time of Gross's hire, Kibbie worked as a Laboratory Technologist (20-2) making $20.00 per hour. (DSMF ¶ 45.) Newsham and Sittler determined that because Gross's applicable education and experience was more extensive than Kibbie's, he should receive a slightly higher hourly rate than Kibbie. (DSMF ¶ 48.)

Based on the analyses of Gross's experience and education in relation to the education and experience of Newsham's other direct reports, Sitter and Newsham decided to provide Gross a $21.00 per hour starting wage. (DSMF ¶ 54.) Sittler and

---

[11] In comparison, Newsham determined that Plaintiff's Master of Science degree was statistical evaluation and computer-work based—not laboratory-based. (DSMF ¶ 51.) Plaintiff also only had two years of laboratory experience, the majority of which was at Zoetis in the 010-2 entry-level job position. (DSMF ¶ 50.)

17

Newsham then decided to onboard Gross in Grade 030-1. At the time of Gross's hire, Newsham was looking for additional leadership in the laboratory and felt that Gross could provide that leadership as a Laboratory Technologist (030-1). (DSMF ¶ 10.) The three other Laboratory Technologists (030-1) were female and were paid more than Gross because they had more experience. (DSMF ¶ 54.) These three employees had been hired in 1987, 1992, and 2003. (PRMF ¶ 54.)

"Compensation systems that determine salaries on the basis of job duties and responsibilities, educational attainments and experience, which are related to the responsibilities and duties that employees must perform in their jobs, are clearly permissible under the Equal Pay Act." *Strecker v. Grand Forks Cty. Soc. Serv. Bd.*, 640 F.2d 96, 100 (8th Cir. 1980), *adopted en banc*, 640 F.2d 109 (8th Cir. March 10, 1981), *abrogated on other grounds by Robino v. Norton*, 682 F.2d 192 (8th Cir. 1982); see *Hutchins v. Int'l Bhd. of Teamsters*, 177 F.3d 1076, 1081 (8th Cir. 1999) ("A differential that is based on education or experience is a factor other than sex recognized by the Equal Pay Act.").

With respect to Foster, the undisputed facts show that he was paid more than Plaintiff because he laterally transferred into the position and maintained his then-current hourly wage. At Zoetis, employees retain their prior wage and grade when they receive a lateral transfer unless the new job is materially different, or the job does not have the corresponding grade. (DSAF1 ¶ 23.)

In October 2016, Foster applied for, and received, a lateral transfer into the microbiology control laboratory as a Laboratory Technologist (020-2). (DSAF1 ¶ 24.) The microbiology control laboratory is where Plaintiff worked as a Laboratory Technologist (020-1). (DSMF ¶ 13.) Before transferring, Foster was a Laboratory Technician (020-2) in the production laboratory earning $18.73 per hour. (DSAF1 ¶ 25; PSMF ¶ 59.) The production laboratory is in a different department than the microbiology control laboratory with a different supervisor. (DSAF1 ¶ 26.) Per Zoetis' standard practice, Foster retained his hourly wage. Thus, after Foster's transfer, Foster made $18.73 per hour as a Laboratory Technologist (020-2), whereas Plaintiff made $18.45 per hour as a Laboratory Technologist (020-1). (DSMF ¶ 13; PSMF ¶ 59.) This pay differential clearly was based on a factor "other than sex." *See*

*Pettiford v. N. Carolina Dep't of Health & Human Servs*., 228 F. Supp. 2d 677, 688-89 (M.D.N.C. 2002) ("Pettiford has provided no evidence which suggests that Walton's salary was not related to the fact that he was receiving that higher salary in another department with DHHS and that his higher salary with the Defendants was due to a lateral transfer. Pettiford has therefore not created a reasonable inference of gender discrimination under Title VII and the Equal Pay Act.").

### E. NFEPA Claims

"The Nebraska legislature patterned the NFEPA after Title VII, and Nebraska courts consider federal court decisions when construing its language." *Davis v. Ricketts*, 765 F.3d 823, 827 (8th Cir. 2014) (citing *Bluff's Vision Clinic, P.C. v. Krzyzanowski,* 555 N.W.2d 556, 559 (Neb. 1996)); *see Knapp*, 901 N.W.2d at 43.

"The standard governing a claim of unequal pay for equal work is the same for Title VII and for the Equal Pay Act." *Hutchins*, 177 F.3d at 1080. "A successful gender-based wage discrimination claim under Title VII requires the plaintiff to prove that her employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 683 (8th Cir. 2001) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)).

The reason this common standard exists, however, is that "the provisions of Title VII regarding sex discrimination in the area of compensation must be construed in harmony with the Equal Pay Act." *Di Salvo v. Chamber of Commerce of Greater Kansas City*, 568 F.2d 593, 596 (8th Cir. 1978). The last sentence of § 703(h) of Title VII, called the "Bennett Amendment," provides that it shall not be an unlawful employment practice for any employer to differentiate upon the basis of sex in determining the amount of its employees' wages if such differentiation is "authorized" by the Equal Pay Act. *See* 42 U.S.C. s 2000e-2(h); *Washington Cty. v. Gunther*, 452 U.S. 161, 166-67 (1981). The four affirmative defenses in the Equal Pay Act have also been incorporated into Title VII. *See id*.; *Orahood v. Bd. of Trustees of Univ. of Arkansas*, 645 F.2d 651, 654 n. 3 (8th Cir. 1981). Thus, "[u]nder a pure claim of unequal pay for equal work, the standards of the Equal Pay Act apply

whether the suit alleges a violation of that Act or Title VII. Where the claim is one involving inadequate compensation, but a comparison with equal work is not possible, Title VII may still provide relief." *Orahood*, 645 F.2d at 654 n. 3. A defendant who establishes one of the four affirmative defenses cannot be held liable under either Title VII or the EPA. *Id.*

In contrast, NFEPA does *not* provide an exception for wage discrimination that is "authorized" by NEPA, although it does provide that "it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system or a system which measures earnings by quantity or quality of production or to employees who work in different locations, if such differences are not the result of an intention to discriminate because of race, color, religion, sex, disability, marital status, or national origin, …." Neb. Rev. Stat. § 48-1111(1).

In the absence of direct evidence of discrimination, the Nebraska Supreme Court applies the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in analyzing NFEPA claims. See *Knapp*, 901 N.W.2d at 43. "[F]irst the plaintiff has the burden of proving a prima facie case of discrimination." *Id.* (quoting *Hartley v. Metropolitan Util. Dist.*, 885 N.W.2d 675, 693 (Neb. App. 2016)). A prima facie case of gender discrimination requires the plaintiff to prove that she "(1) is a member of a protected class, (2) was qualified to perform the job, (3) suffered an adverse employment action, and (4) was treated differently from similarly situated persons of the opposite sex." *Id.* (quoting in *Helvering v. Union Pacific RR. Co.*, 703 N.W.2d 134, 154 (Neb. App. 2005)).

"[T]he test to determine whether employees are similarly situated to warrant a comparison to a plaintiff is a rigorous one and … the plaintiff has the burden of demonstrating that there were individuals similarly situated in all relevant aspects to the plaintiff by a preponderance of the evidence." *Id.* On the evidence presented, Plaintiff cannot meet this heavy burden of proof. Plaintiff has admitted that she had fewer duties and responsibilities as a Laboratory Technologist (020-1) than did Foster as a Laboratory Technologist (020-2) or Gross as a Laboratory Technologist

(030-1). (PSMF ¶ 33; DSMF ¶¶ 27, 29.) *See id.* at 45 ("Because Knapp did not show the existence of males who were similarly situated, she could not show that males were treated differently. Any differences in compensation or classification could be explained by the differences in duties."). But even if Plaintiff could establish a prima facie case of gender-based wage discrimination, her claim necessarily fails in subsequent steps of the *McDonnell Douglas* analysis.

"Once the plaintiff has established a prima facie case of discrimination, the burden of production shifts to the employer to rebut the prima facie case by producing 'clear and reasonably specific' admissible evidence that would support a finding that unlawful discrimination was not the cause of the employment action. When the employer articulates a legitimate, nondiscriminatory reason for the decision, raising a genuine issue of fact as to whether it discriminated against the employee, the employer's burden of production created by the employee's prima facie case is satisfied and drops from the case." *Hartley*, 885 N.W.2d at 694 (footnoted citations omitted).

"After the employer has presented a sufficient, neutral explanation for its decision, the question is whether there is sufficient evidence from which a jury could conclude that the employer made its decision based on the employee's protected characteristic, despite the employer's proffered explanation. At this stage, the employee must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. That is, the plaintiff may attempt to establish that she was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." *Id.* (internal quotation marks, alterations, and footnoted citations omitted).

Here, Defendant has stated that the decision to onboard Gross in Grade 030-1 with a starting wage of $21.00 per hour was based on his education and experience and a comparison with the pay rates of other employees. (DSMF ¶¶ 42-48, 54.) The decision to designate Foster as a Laboratory Technologist (020-2) with a pay rate of $18.73 per hour was based on Defendant's policy that employees retain their prior wage and grade when they receive a lateral transfer unless the new job is materially

21

different, or the job does not have the corresponding grade. (DSAF1 ¶¶ 23-25.) These are legitimate, nondiscriminatory reasons for the decisions, and Plaintiff has not presented any competent evidence to show that they are "unworthy of credence."

In addition to claiming that her rate of pay was a NFEPA violation, Plaintiff alleges in her Amended Complaint that she was constructively discharged "due to Zoetis' willful failure to remedy the known and continuing gender discrimination." (Filing No. 1-1, p. 10, ¶ 21.) Plaintiff fails to address this additional claim in the supporting brief for her summary judgment motion. Under the court's local rules, a supporting brief "must concisely state the reasons for the motion and cite to supporting authority. A party's failure to brief an issue raised in a motion may be considered a waiver of that issue." NECivR 7.0.1(a)(1)(A). The court therefore does not consider Plaintiff's constructive discharge claim as forming part of her motion for summary judgment. *See LOL Fin. Co. v. Paul Johnson & Sons Cattle Co.*, 758 F. Supp. 2d 871, 877-78 n. 9 (D. Neb. 2010). However, Plaintiff's constructive discharge claim will be subject to dismissal with the granting of Defendant's motion for summary judgment.

"To prove a constructive discharge, an employee must show that the employer deliberately created intolerable working conditions with the intention of forcing her to quit." *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 826 (8th Cir. 2017) (quoting *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 418 (8th Cir. 2010)). "Whether [Plaintiff's] working conditions … were intolerable is viewed from the perspective of a reasonable person in [Plaintiff's] situation." *Martin v. Nebraska Methodist Health Sys., Inc.*, No. 8:17-CV-121, 2019 WL 802743, at *8 (D. Neb. Feb. 21, 2019) (citing *Gartman v. Gencorp Inc.*, 120 F.3d 127, 130 (8th Cir. 1997)). "The plaintiff can satisfy the intent requirement by demonstrating that [she] quit as a reasonably foreseeable consequence of the employer's discriminatory actions." *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996) (citing *Hukkanen v. Int'l Union of Operating Eng'rs,* 3 F.3d 281, 285 (8th Cir. 1993)).[12]

---

[12] The Eighth Circuit has observed that "plaintiffs have a higher evidentiary burden to prove a constructive discharge than an adverse employment action." *AuBuchon v. Geithner*, 743 F.3d 638, 645 (8th Cir. 2014) (citing *Wilkie v. Dept. of Health & Human Servs.,* 638 F.3d 944, 954 (8th Cir. 2011)); *see also Blake*, 870

In this case, Plaintiff does not allege that she was subjected to a hostile work environment, and, in fact, has admitted that she was never harassed at Zoetis based on her gender or other characteristic. (DSMF ¶ 24.) Plaintiff also testified at her deposition that she would return to work at Zoetis as a lab technologist if her rate of pay was commensurate with her job duties. (DSMF ¶ 25; Filing No. 47-3, p. 15.) Plaintiff's only complaint is that she did not receive a promotion or a raise.

The evidence shows that Plaintiff became upset after she learned in August 2016 that Gross had been paid $21.00 per hour, because she did not believe he was qualified. (DSMF ¶¶ 12, 14.)[13] Plaintiff discussed Gross's pay with Newsham during a meeting in August 2016, where she told Newsham that she "suspected" Gross made more than her. (DSMF ¶ 16.) Her request for a promotion and pay raise was denied. (PSMF ¶¶ 55-57; PSAF1 ¶ 99.) During three subsequent meetings with Newsham, Plaintiff asked for more money but did not mention Gross. (DSMF ¶ 17.) Newsham again denied her requests for a pay increase or promotion. (PSMF ¶¶ 57, 59-60; PSAF1 ¶¶ 104, 105.)

In December 2016, Plaintiff told Sittler that she made less money than Gross even though she believed she performed more job duties. (DSMF ¶ 18.) Plaintiff states she also told Sittler that she was applying for other jobs for this reason, and Sittler responded that Gross hadn't been paid "that much more" than her. (PSMF ¶ 58.) Sittler denies this particular exchange took place. (DRSF ¶ 58.)[14]

When Plaintiff resigned on March 24, 2017, shortly after receiving a merit increase of $0.54 per hour, she told Newsham that her resignation was because she found another job that was more suited toward her background. (DSMF ¶¶ 20-22.)

_____

F.3d at 826 ("An employee claiming constructive discharge shoulders a substantial burden.") (citing *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 810-11 (8th Cir. 2008)).

[13] Plaintiff's co-workers discovered Gross's offer letter in his desk following his termination. (PSMF ¶ 53.) Plaintiff did not learn about Foster's pay rate until discovery was conducted in this case.

[14] While this and other evidence may create a genuine issue of fact as to whether Plaintiff's resignation was reasonably foreseeable by Defendant, there is no need to reach the question of intent in this case.

In her resignation letter, Plaintiff gives the reason for her resignation as a job offer for a position that uses her skills in math and statistics daily. (DSAF1 ¶ 16.)

On the evidence presented, no reasonable person in Plaintiff's situation would find her working conditions intolerable. The fact situation in this case is similar to *Hutchins*, in which the plaintiff "claim[ed] that she was forced to quit her job as a result of the [defendant's] refusal to rectify the pay disparity." 177 F.3d at 1082. In affirming the dismissal of the plaintiff's constructive discharge claim, the Eighth Circuit stated: "To establish a claim of constructive discharge under Title VII, a plaintiff must show more than just a violation of the statute…. Hutchins presented no evidence of working conditions that were so intolerable as to compel her to resign. Thus, her constructive discharge claim fails under Title VII." *Id.*

Finally, to the extent Plaintiff is seeking to advance a failure-to-promote or similar claim,[15] she has failed to present any evidence that she was treated differently from similarly situated male employees.[16] And with respect to Newsham's denials of Plaintiff's repeated requests for more money, a "decision not to raise … salary [is] not an adverse employment action [where] … salary [is] not decreased or otherwise

---

[15] Plaintiff argues in her brief opposing Defendant's motion for summary judgment that she "suffered multiple adverse employment actions," including "the denial of the four requests for a pay increase Perry made to Newsham between August 2016 and April 2017 as well as Newsham's repeated denials of Perry's requests for additional training, more job duties, more job opportunities, and promotions." (Filing No. 61, p. 29.) It is questionable whether Plaintiff's Amended Complaint gave Defendant fair notice of these claimed adverse actions. *See N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) "[W]hile we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment.").

[16] To establish a prima facie case of sex discrimination in a failure-to-promote claim, a plaintiff must show that: "(1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011) (quoting *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996)).

24

diminished in any way." *Turner v. Gonzales*, 421 F.3d 688, 696 (8th Cir. 2005) (quoting *Tademe v. St. Cloud State Univ.,* 328 F.3d 982, 992 (8th Cir. 2003)).

## III. CONCLUSION

Viewing the evidence in the light most favorable to Defendant, and giving Defendant the benefit of all inferences that may be reasonably drawn from the evidence, the court concludes Plaintiff has failed to show that she can establish a prima facie case of sex discrimination under NEPA or NFEPA. Plaintiff's position at Zoetis was not substantially equal to those of the two male comparators, and their higher rates of pay were based on legitimate factors other than sex. Plaintiff was not constructively discharged, and she has failed to produce sufficient evidence to prove that any similarly situated male employee was treated more favorably with respect to compensation or other terms, conditions, or privileges of employment.

Plaintiff's motion for summary judgment therefore will be denied in all respects. Her motion to strike part of Defendant's motion for summary judgment will also be denied.

Viewing the evidence in the light most favorable to Plaintiff, and giving Plaintiff the benefit of all inferences that may be reasonably drawn from the evidence, the court concludes Defendant has shown that Plaintiff is unable to prove a prima facie case under NEPA or NFEPA. Defendant has further shown that it has a valid affirmative defense to Plaintiff's NEPA claim, and that Plaintiff cannot prove that the reasons given by Defendant for the alleged pay disparties are pretextual.

Because Defendant has demonstrated that there is no genuine dispute as to any material fact, and that it is entitled to judgment as a matter of law, Defendant's motion for summary judgment will be granted in all respects. Accordingly, Plaintiff's action will be dismissed with prejudice and a final judgment will be entered by separate document.

IT IS THEREFORE ORDERED:

1.     Plaintiff's motion to strike (Filing No. 63) is denied.

2.      Plaintiff's motion for summary judgment (Filing No. 40) is denied.

3.      Defendant's motion for summary judgment (Filing No. 43) is granted.

4.      Plaintiff's action is dismissed with prejudice.

5.      Judgment shall be entered by separate document, and the clerk of the court shall close the case for statistical purposes.


Dated this 20th day of May, 2020.

                              BY THE COURT:

                              *Richard G. Kopf*
                              Richard G. Kopf
                              Senior United States District Judge